170 F.3d 442
 Robert Paul PELISSERO, Petitioner-Appellant,
v.
W.J. THOMPSON, Warden, FCI, Morgantown, WV, Respondent-Appellee.
Pamela Armour; Tamara Bayles; Sandra Lewis Cockrell;
Wonda Cortes; Marsha Poore Crawford; Mary Kathleen
Lobbins; Kim Lovvorn; Diane McNabb; Sharon Strauss;
Mildred Thompson; Lori Tuttle, Amici Curiae.
Aubra S. Hayes, Jr., Petitioner-Appellant,
v.
Federal Bureau of Prisons; Kathleen M. Hawk, Director of
the Bureau of Prisons, Respondents-Appellees.
 Nos. 97-6156, 97-6221.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 10, 1998.
Decided March 12, 1999.
 
 ARGUED: James R. Fox, Jory & Smith, Elkins, West Virginia, for Appellant. Bill David Burlington, Regional, Bureau of Prisons, Butner, North Carolina, for Appellee. ON BRIEF: William D. Wilmoth, United States Attorney, Daniel W. Dickinson, Jr., Assistant United States Attorney, Rita R. Valdrini, Assistant United States Attorney, Wheeling, West Virginia, for Appellee. Pamela Armour, Tamara Bayles, Sandra Lewis Cockrell, Wonda Cortes, Marsha Poore Crawford, Mary Kathleen Lobbins, Kim Lovvorn, Diane McNabb, Sharon Strauss, Mildred Thompson, Lori Tuttle, Amici Curiae Pro Se.
 Before WILKINS and NIEMEYER, Circuit Judges, and CHAMBERS, United States District Judge for the Southern District of West Virginia, sitting by designation.
 Affirmed by published opinion. Judge NIEMEYER wrote the opinion, in which Judge WILKINS joined. Judge CHAMBERS wrote a dissenting opinion.
 OPINION
 NIEMEYER, Circuit Judge:
 
 
 1
 Section 3621(e)(2)(B) of Title 18 of the United States Code provides that the prison terms of prisoners convicted of "nonviolent" offenses may be reduced by the Bureau of Prisons in an amount up to one year as an incentive for the prisoners' successful completion of a residential substance abuse treatment program. Although inmates Robert Pelissero and Aubra Hayes completed the specified substance abuse treatment program, the Bureau of Prisons denied them any reduction of their sentences, relying on its Program Statement No. 5162.02, which specifies that a prisoner convicted of, or whose sentence was enhanced for, possession of a firearm during the commission of a drug offense is convicted of a "crime of violence" and cannot have his sentence reduced under § 3621(e)(2)(B).
 
 
 2
 In separate petitions for a writ of habeas corpus filed under 28 U.S.C. § 2241, Pelissero and Hayes challenged the validity of Program Statement No. 5162.02, particularly its definition of "nonviolent offense." In each case, the district court upheld the Program Statement and denied the petition. For reasons that follow, we affirm.
 
 
 3
 * As part of the Crime Control Act of 1990, Congress required the Bureau of Prisons to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). Then in 1994, to provide an incentive to federal prisoners to enroll in and complete the Bureau of Prisons' drug treatment programs, Congress authorized the Bureau to reduce by up to one year the sentence of "a prisoner convicted of a nonviolent offense" who successfully completes a treatment program. 18 U.S.C. § 3621(e)(2)(B). While eligibility for early release under § 3621(e)(2)(B) is open to all prisoners who meet the statutory requirements, the statute expressly vests the Bureau of Prisons with broad discretion to grant or deny sentence reductions to eligible prisoners. See 18 U.S.C. § 3621(e)(2)(B) ("[T]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons") (emphasis added); see also Downey v. Crabtree, 100 F.3d 662, 670 (9th Cir.1996) ("Section 3621(e)(2)(B) ... reflects unequivocal Congressional intent to leave to the Bureau final decisions regarding whether to grant eligible inmates a sentence reduction following successful completion of a drug treatment program").
 
 
 4
 To interpret the statute, the Bureau of Prisons issued a regulation in May 1995 defining "nonviolent offense" as the converse of "a crime of violence." See 28 C.F.R. § 550.58 (1995). This 1995 regulation excluded from eligibility for early release under § 3621(e)(2)(B) those inmates whose "current offense is determined to be a crime of violence as defined in 18 U.S.C. § 924(c)(3)." 28 C.F.R. § 550.58(1995). Section 924(c)(3) of Title 18 in turn defines a crime of violence as any offense that is a felony and that either "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" or "by its nature, involves a substantial risk that physical force against the person or property of another maybe used in the course of committing the offense." In its request for comment, which accompanied the publication of Regulation 550.58, the Bureau of Prisons explained that "[i]nformation contained in the Presentence Investigation Report ordinarily is sufficient to allow staff to determine if the inmate's committed offense meets this definition of crime of violence." 60 Fed.Reg. 27692, 27692 (May 25, 1995).
 
 
 5
 To further assist case management staff in deciding whether an inmate qualifies for early release under 18 U.S.C. § 3621(e)(2)(B) and under implementing Regulation 550.58, the Bureau of Prisons adopted Program Statement No. 5162.02 ("P.S. 5162.02") in July 1995. The Program Statement offers an exhaustive list of offenses that the agency considers to be "crimes of violence." Section 7 of the Program Statement provides that "in all cases" a conviction under 18 U.S.C. § 922(g) constitutes a crime of violence. And Section 9 identifies other offenses "that may be crimes of violence depending on the specific offense characteristic assigned." Section 9 expressly provides that a defendant who has been convicted of a drug offense under 21 U.S.C. § 841 and who has received a two-level sentencing enhancement for gun possession has been convicted of a "crime of violence." The Program Statement explains that such possession "poses a substantial risk that force may be used against persons or property."
 
 
 6
 Because federal cases have held that possession of a firearm by a felon is not a crime of violence under 18 U.S.C. § 924(c), a split has developed among the circuits on the question of whether P.S. 5162.02 is a valid interpretation of the Bureau of Prisons' Regulation 550.58 or whether the Bureau of Prisons is bound by the case law interpreting the definition of "crime of violence" found in 18 U.S.C. § 924(c),which definition the Bureau of Prisons incorporated into its regulation. Compare, e.g., Parsons v. Pitzer, 149 F.3d 734, 737 (7th Cir.1998) (upholding BOP's interpretation of "nonviolent offense" as "permissible and reasonable"); Venegas v. Henman, 126 F.3d 760, 763 (5th Cir.1997) (upholding P.S. 5162.02 as proper exercise of Bureau of Prisons' discretion "to determine what offenses, in context, are violent for purposes of Section 3621(e) and, therefore, not appropriate for exposure to the incentive of early release"), cert. denied, --- U.S. ----, 118 S.Ct. 1679, 140 L.Ed.2d 817 (1998), with Martin v. Gerlinski, 133 F.3d 1076, 1079(8th Cir.1998) (Bureau of Prisons may not categorically deny early release under § 3621(e)(2)(B) to inmates who receive two-level sentencing enhancement for firearm possession); Davis v. Crabtree, 109 F.3d 566, 570 (9th Cir.1997) (Bureau of Prisons "may not interpret the term 'nonviolent offense' to exclude the offense of felon in possession of a firearm").
 
 
 7
 To clarify how it has been exercising, and intends to exercise, its discretion granted under 18 U.S.C. § 3621(e)(2)(B), the Bureau of Prisons adopted a revised Regulation 550.58 in October 1997. The revised regulation abandons its incorporation of the crime-of-violence definition from 18 U.S.C. § 924(c) and restates the Bureau's position held in P.S. 5162.02. It again excludes those inmates from eligibility for early release "whose current offense is a felony" that "involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives." 28 C.F.R. § 550.58(a)(1)(vi)(B) (1997). This 1997 revised regulation, however, was issued after the notices of appeal in these cases were filed. Moreover, because the Bureau of Prisons has intended to apply its revised regulation to inmates who entered a drug treatment program after October 9, 1997, see Program Statements 5333.10 & 5162.04 (Oct. 9, 1997), and Pelissero and Hayes entered drug programs before October 9, 1997, we will review these cases under the original 1995 regulation and P.S. 5162.02.
 
 II
 
 8
 Pelissero pled guilty to conspiracy to distribute and possess with intent to distribute in excess of five kilograms of cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1). On August 23, 1991, the district court in the Western District of Pennsylvania sentenced him to 100 months imprisonment. This sentence included a two-level enhancement imposed pursuant to § 2D1.1 of the United States Sentencing Guidelines for possessing a firearm during the commission of these offenses. Hayes pled guilty to distribution of over five grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1), and to possession of a handgun by a convicted felon, in violation of 18 U.S.C. § 922(g). On March 2, 1993, the district court in the Southern District of Ohio sentenced Hayes to two concurrent 84-month sentences of imprisonment.
 
 
 9
 Both Pelissero and Hayes are currently incarcerated at the Federal Correctional Institution in Morgantown, West Virginia.
 
 
 10
 Pelissero completed a drug abuse treatment program conforming to the requirements of 18 U.S.C. § 3621(b) in May 1993, and Hayes completed a similar program in August 1995. Both, however, were denied reduction of their sentences under 18 U.S.C. § 3621(e)(2)(B) because they did not qualify for the reduction as that statute was interpreted by Bureau of Prisons' Program Statement No. 5162.02(7) & (9). Because Pelissero's sentence had been enhanced for possession of a firearm in connection with a drug offense and Hayes had been convicted of possession of a firearm by a convicted felon, both were deemed by the Bureau of Prisons to have been convicted of crimes of violence as defined in P.S. 5162.02.
 
 
 11
 After exhausting their administrative remedies, Pelissero and Hayes filed these petitions for habeas corpus under 28 U.S.C. § 2241, challenging the validity of P.S. 5162.02. The district court upheld the Program Statement's validity, observing:
 
 
 12
 The use of guns in connection with drug offenses clearly causes one of the most violent and deadly problems our society has to deal with today. It is entirely reasonable and certainly not arbitrary for the BOP to equate gun possession and drug dealing with violence, thus supporting its interpretation of not being a "nonviolent offense."
 
 
 13
 Pelissero v. Thompson, 955 F.Supp. 634, 636 (N.D.W.Va.1997). The court, accordingly, denied their petitions, and these appeals followed.
 
 III
 
 14
 Pelissero and Hayes contend that they were not convicted of crimes of violence within the meaning of 28 C.F.R. § 550.58 (1995) and 18 U.S.C. § 924(c)(3), the statute which is incorporated into the regulation. They note that other circuit courts interpreting § 924(c) have held that drug trafficking accompanied by possession of a handgun does not meet the statute's definition of a crime of violence. See, e.g.,United States v. Canon, 993 F.2d 1439, 1441 (9th Cir.1993)("[P]ossession of a firearm by a felon is not a 'crime of violence' under § 924(c)"); United States v. Meyer, 803 F.2d 246, 249 (6th Cir.1986) (cocaine distribution offense, even when a firearm was present,does not constitute "crime of violence" for purposes of 18 U.S.C. § 924(c)). Accordingly, Pelissero and Hayes argue that P.S. 5162.02 is in conflict with the 1995 regulation and therefore is invalid. Additionally, they argue that P.S. 5162.02 is invalid because the Bureau of Prisons failed to follow the notice and comment requirements for agency rulemaking set forth in the Administrative Procedure Act, 5 U.S.C. § 553.
 
 
 15
 Pelissero's and Hayes' position that P.S. 5162.02 is invalid has some support. See, e.g., Martin, 133 F.3d at 1079; Roussos v. Menifee, 122 F.3d 159, 163 (3d Cir.1997); Davis, 109 F.3d at 570. The district court in this case, however, concluded that the Bureau of Prisons is not bound by the case law interpreting 18 U.S.C. § 924(c)when implementing 18 U.S.C. § 3621(e)(2)(B). Rather, it concluded that as the agency given discretion by Congress to reduce the sentences of prisoners convicted of nonviolent crimes who have completed a prescribed drug treatment program, the Bureau of Prisons may adopt a reasonable interpretation of what constitutes a nonviolent crime. See Pelissero, 955 F.Supp. at 637. This position also has support. See, e.g., Parsons, 149 F.3d at 738 (upholding P.S. 5162.02 as a permissible exercise of the Bureau's discretion); Venegas, 126 F.3d at 763 (same).
 
 
 16
 In determining the validity of P.S. 5162.02, we must consider the related regulation, 28 C.F.R. § 550.58 (1995), and the authorizing statute, 18 U.S.C. § 3621(e)(2)(B). The principles governing this analysis are well-established:
 
 
 17
 First, we must determine whether the statute directly addresses the precise issue before us. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Second, if the statute is silent or ambiguous in expressing congressional intent, we must determine whether the agency's interpretation is based on a "permissible construction of the statute." Chevron, 467 U.S. at 843, 104 S.Ct. 2778.
 
 
 18
 Snowa v. Commissioner of Internal Revenue, 123 F.3d 190, 195-96(4th Cir.1997) (parallel and string citations omitted).
 
 
 19
 Although the statute grants the Bureau of Prisons broad discretion to grant or deny sentence reductions to inmates who are convicted of "a nonviolent offense" and who complete a drug treatment program, see 18 U.S.C. § 3621(e)(2)(B), it is silent about defining "a nonviolent offense." Accordingly, we must decide whether 28 C.F.R. § 550.58(1995), as applied through P.S. 5162.02, represents a reasonable implementation of the statute. Our decision in Snowa restates the guiding principles:
 
 
 20
 Our standard of review in determining whether an agency's regulation is valid depends on whether the regulation is legislative or interpretive. A regulation promulgated in the following circumstance is legislative: "If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." Chevron, 467 U.S. at 843-44, 104 S.Ct. 2778. Legislative regulations are to be given "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." Id. at 844, 104 S.Ct. 2778. Interpretive regulations, on the other hand, clarify ambiguous terms found in the statute or explain how a provision operates. Interpretive regulations are accorded "considerable weight," id., and should be upheld if they implement the congressional mandate in a reasonable manner. National Muffler Dealers Ass'n, Inc. v. United States, 440 U.S. 472, 476, 99 S.Ct. 1304, 59 L.Ed.2d 519 (1979).
 
 
 21
 123 F.3d at 197 (parallel and string citations omitted). While the distinction between legislative rules and interpretive rules "is not always easily made," Jerri's Ceramic Arts v. Consumer Prod. Safety Comm'n, 874 F.2d 205, 207 (4th Cir.1989), the regulation at issue here is undoubtedly an interpretive rule as it interprets the term "non-violent offense." Accordingly, we will uphold the regulation so long as it "implement[s] the congressional mandate in a reasonable manner." Snowa, 123 F.3d at 197. In making this determination, we must assess whether the regulation "represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute." Chevron, 467 U.S. at 845, 104 S.Ct. 2778 (citation omitted); Stiver v. Meko, 130 F.3d 574, 577 (3d Cir.1997).
 
 
 22
 As the district court appropriately recognized, Congress entrusted the decision whether to grant inmates early release under 18 U.S.C. § 3621(e)(2)(B) "solely to the discretion and expertise of the BOP, with a cautious eye toward the public safety and welfare." Pelissero, 955 F.Supp. at 637. In exercising this discretion, the Bureau of Prisons must balance Congress's twin goals of providing an incentive for certain prisoners to undergo drug treatment while at the same time protecting the public from potentially violent criminals. In its effort to carry out these goals, the Bureau of Prisons determined that a defendant will be excluded from the program if he has been convicted of a "crime of violence" as defined in 18 U.S.C. § 924(c)(3) (defining crime of violence as a felony that either "has as an element the use, attempted use, or threatened use of physical force" or "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense"). To implement this definition, the Bureau adopted P.S. 5162.02 which lists specific offenses that will be considered violent. The list includes a conviction or sentence enhancement for possession of a firearm in connection with the commission of a drug offense.
 
 
 23
 While the Bureau of Prisons' definition of a crime of violence may not be consistent with court interpretations of 18 U.S.C. § 924(c)(3), it is, nevertheless, a permissible and reasonable interpretation of the statute from which the Bureau derived its authority. We agree with the Seventh Circuit's observation in Parsons:
 
 
 24
 Given the substantial risk of danger and the inherently violent nature of firearms, particularly firearms in the possession of a convicted felon, there is nothing unreasonable about the BOP's decision to classify a conviction for possession of a firearm by a felon as "a crime of violence in all cases" for purposes of determining an inmate's eligibility for early release.
 
 
 25
 149 F.3d at 738.
 
 
 26
 Pelissero and Hayes also argue that P.S. 5162.02 is invalid because it was not published for notice and comment as required for agency rulemaking under the Administrative Procedure Act. A policy statement, however, is not a substantive rule but rather an interpretative statement of position circulated within an agency that serves to provide administrative guidance in applying a then existing published rule. Accordingly, it is not subject to rulemaking requirements. See Parsons, 149 F.3d at 738. While we do agree that a policy statement does not carry as much weight as a rule, it is nonetheless entitled to "some deference." Id.
 
 
 27
 In short, through 28 C.F.R. § 550.58 (1995) and P.S. 5162.02, which define a violent crime as one whose commission includes the possession or use of firearms, the Bureau of Prisons has exercised the discretion given to it by Congress in 18 U.S.C. § 3621(e)(2)(B). Because possessing a firearm adds an aspect of violence to otherwise nonviolent conduct by posing a risk of danger to others, we conclude that the Bureau of Prisons acted permissibly and reasonably in applying 18 U.S.C. § 3621(e)(2)(B) to deny inmates early release when their convictions involve the use or possession of firearms.
 
 IV
 
 28
 Applying 28 C.F.R. § 550.58 (1995) and P.S. 5162.02 to Pelissero and Hayes, there is no substantial dispute that they failed to qualify as prisoners who have been convicted of a nonviolent offense. Both were convicted of felonies, see 18 U.S.C. § 3559(a) (an offense for which the maximum term of imprisonment exceeds one year), and both felonies "involved" the possession of a handgun. Pelissero admits that a handgun was in his "possession and control" during the commission of his crime, for which he received a two-level sentencing enhancement, and the essential element of the Hayes crime involved his possession of a firearm. See 18 U.S.C. § 922(g). Because these are crimes of violence as defined in 28 C.F.R. § 550.58 (1995) and P.S. 5162.02, the Bureau of Prisons properly denied Pelissero and Hayes early release under 18 U.S.C. § 3621(e)(2)(B).
 
 
 29
 Accordingly, we affirm the district court's orders denying their petitions for a writ of habeas corpus.
 
 
 30
 AFFIRMED.
 
 CHAMBERS, District Judge, dissenting:
 
 31
 The BOP has exceeded its statutory authority by interpreting 18 U.S.C. § 3621(e)(2)(B) in a manner inconsistent with the plain language of the statute and contrary to settled law. The BOP's misinterpretation of its governing statute, in both its original regulations and the 1997 revisions, reveals a misunderstanding of the proper exercise of the BOP's discretion. Both the majority and the BOP would expand the parameters of the BOP's discretion to allow the agency to redefine a statutory term beyond its plain meaning. For these reasons and the reasons stated herein, I respectfully dissent.
 
 
 32
 The governing statute, 18 U.S.C. § 3621(e)(2)(B), allows the BOP to grant sentence reductions to inmates "convicted of a nonviolent offense." As almost every circuit court has recognized, "[t]he operative word of § 3621(e)(2)(B) is 'convicted.' " Downey v. Crabtree, 100 F.3d 662, 668 (9th Cir.1996); see also Roussos v. Menifee, 122 F.3d 159, 163 (3d Cir.1997) ("By ignoring the offense of conviction and looking only to sentencing factors, the BOP has attempted to transmogrify a nonviolent offense into a crime of violence.") (quotations omitted); Fuller v. Moore, 133 F.3d 914, 1997 WL 791681, at * 2 (4th Cir.1997) ("The statute is phrased in terms of a conviction of a nonviolent offense.... In other words, the statute makes clear that it is impermissible to consider facts other than those that form the basis for the elements of the offense for which the prisoner was convicted.") (quotations omitted); Bush v. Pitzer, 133 F.3d 455, 457 (7th Cir.1997) ("[T]he statute speaks of a nonviolent offense while the Program Statement anchors the definition to deeds that do not constitute the offense.") (quotations omitted); Martin v. Gerlinski, 133 F.3d 1076, 1080-81 (8th Cir.1998) ("[T]he Program Statement's allowance of consideration of factors that are not part of the offense of conviction is in conflict with the plain language of the statute."); Fristoe v. Thompson, 144 F.3d 627, 631 (10th Cir.1998) ("Section 3621(e)(2)(B) refers to prisoners 'convicted of a nonviolent offense.' (emphasis added). The statute does not permit resort to sentencing factors or sentencing enhancements attached to the nonviolent offense."); Byrd v. Hasty, 142 F.3d 1395, 1398 (11th Cir.1998) ("The statute, 18 U.S.C. § 3621(e)(2)(B), speaks only in terms of conviction."). By using the phrase "convicted of a nonviolent offense," Congress expressly incorporated the statutory elements necessary for conviction under the offense charged, and not conduct unnecessary to the conviction, as a condition of eligibility. However, both the former regulation and the revised regulation allow the BOP to exclude categorically inmates based upon sentencing factors, without regard to the underlying conviction.
 
 
 33
 The majority premises its analysis on the view that the statute does not define the phrase "nonviolent offense", reducing the issue to whether the BOP regulation and policy statement reasonably interpret these words. This approach first ignores an important part of the phrase in the statutory language, which reads "convicted of a nonviolent offense". The plain meaning of this phrase is not difficult to discern, and its application requires only a review of the charge of conviction to determine whether actual or implied violence was an element. To the extent that this phrase is ambiguous or the statute is silent as to its meaning, the BOP correctly looked to § 924(c)(3) in its initial regulation. However, with no compelling reason to ignore the judicial interpretations of this language, the Bureau did just that through its policy statement. The majority countenances discarding along line of cases from many circuits which construed § 924(c)(3) differently. Noting the "twin goals" of providing the incentive for inmates but protecting the public from potentially violent criminals, the majority glosses over the inconsistency between the regulation and the policy statement and their contradiction with the statute.
 
 
 34
 The Supreme Court has held that federal courts are bound by the Sentencing Commission's definition of "crime of violence" in the commentary to U.S.S.G. § 4B1.2, which provides that felon in possession of a firearm convictions are not crimes of violence. Stinson v. United States, 508 U.S. 36, 46-47, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). If the federal courts must uniformly apply the Sentencing Commission's definition of "crime of violence," it makes little sense to allow the BOP to adopt a contrary definition. This Court has also held that "the offense, felon in possession of a firearm, in the absence of any aggravating circumstances charged in the indictment, does not constitute a per se 'crime of violence....' " United States v. Johnson, 953 F.2d 110, 115 (4th Cir.1991). The BOP should be bound by these interpretations.
 
 
 35
 The majority seems to believe that these contradictions can be justified as permissible exercises of the BOP's discretion. Concededly, the statute vests virtually unfettered discretion in the BOP to determine who, among the statutorily eligible inmates, should be granted early release. Under the statute, the BOP also has broad discretion to determine the length of any particular sentence reduction. But the BOP does not have discretion to interpret statutory language in a way that conflicts with the statute's plain meaning, as well as settled law. As a recent district court opinion explained:
 
 
 36
 BOP does not ... have the "discretion" to interpret "prisoners convicted of a nonviolent offense" and "crimes of violence" under § 924(c)(3) in whatever way it chooses. These are statutory and regulatory terms whose meaning is quite clear, to the extent BOP has its own definitions of these terms, these interpretations are not permissible exercises of discretion but are instead statutory interpretations by an agency to which this Court owes some deference only if not contrary to the statute's clear meaning.
 
 
 37
 La Sorsa v. Spears, 2 F.Supp.2d 550, 560 (S.D.N.Y. 1998). See also Orr v. Hawk, 156 F.3d 651, 656 (6th Cir.1998).
 
 
 38
 Under this view, BOP officials may deny or limit sentence reductions to individual inmates convicted of nonviolent offenses based on such factors as sentence enhancements and firearm possession. But this does not change the fact that such inmates are statutorily eligible for sentence reductions, and are thus statutorily entitled to an individualized determination by the BOP. The Bureau may impose reasonable restrictions or limitations on any sentence reduction based upon the particular prisoner's propensity to violence, even for those inmates whose eligibility is not at issue. Even so, I do not believe the BOP may categorically exclude such inmates without offending the statute's plain language and settled law. For these reasons, I would join in the reasoned judgment of seven of our sister circuits, as well as a recent panel of this court, and find that the BOP exceeded its statutory authority in categorically excluding inmates from sentence reductions based upon sentencing factors and firearm possession convictions.